UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PATCO CONSTRUCTION COMPANY, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>PEOPLE'S UNITED BANK d/b/a OCEAN BANK,<br><br>        Defendant. | Civil Action No. 2:09-CV-00503-DBH |

**MEMORANDUM IN SUPPORT OF DEFENDANT
PEOPLE'S UNITED BANK'S MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant People's United Bank d/b/a Ocean Bank ("Ocean Bank") respectfully submits this memorandum in support of its motion to dismiss the Complaint and Demand for Jury Trial ("Complaint") filed in this matter by Plaintiff Patco Construction Company, Inc. ("Patco" or "Plaintiff").

**INTRODUCTION**

This case is about the loss Plaintiff incurred when cybercriminals accessed Plaintiff's commercial checking account with Ocean Bank (the "Account") as a result of Plaintiff's failure to safeguard its account information. The theft of Plaintiff's funds occurred through unauthorized access to Plaintiff's computers by unknown individuals and not through any breach by Ocean Bank. In effecting the electronic funds transfers Plaintiff claims were unauthorized, *Ocean Bank followed the security procedures agreed upon by the parties with respect to electronic funds transfers*. Remarkably, Plaintiff seeks to transfer the blame for its own failures – and for the actions of third-party criminals – to Ocean Bank. Ocean Bank cannot be a

guarantor of its customers in the event of fraud or theft through no fault of Ocean Bank.  To do so would turn hundreds of years of banking law on its head.

Moreover, Plaintiff's complaint is a feeble attempt to get around the provisions of the express agreements governing its relationship with Ocean Bank.  Plaintiff's failure to explicitly refer to those agreements appears to be a deliberate effort to divert this Court's attention from the fact that Plaintiff is suing Ocean Bank merely for performing banking services in the manner contractually agreed upon by the parties.  The relationship between the parties was that of a bank and a customer; nothing more.  It is axiomatic that a bank is not a fiduciary to the customer holding a deposit account.  Accordingly, Plaintiff's breach of fiduciary duty claim (Count IV) must fail.  In addition, the existence of an express written agreement that covers the subject matter of Plaintiff's allegations absolutely precludes its claims for breach of implied contract and unjust enrichment (Counts III and V).

The express provisions of the agreements between the parties also preclude Plaintiff's remaining claims.  Ocean Bank followed the security procedures contractually agreed upon by the parties with respect to electronic funds transfers.  As a result, Plaintiff cannot now claim that Ocean Bank was negligent under a duty of care not contained in the parties' agreements.  In addition, under the express exculpatory provisions in the Ocean Bank eBanking and Bill Payment Agreement (the "eBanking Agreement") and the Ocean National Bank Automated Clearing House Agreement, dated September 5, 2003 (the "ACH Agreement") (collectively, the "Agreements"), Ocean Bank is liable only for conduct rising to the level of gross negligence and willful misconduct.  Thus, Plaintiff's claim for ordinary negligence (Count II) must fail given the express terms of the contract.  Furthermore, the governing law provision in the ACH Agreement provides that it shall be construed in accordance with Connecticut law.  Thus, Plaintiff's claim

2

under a Maine statute (Count I) should be dismissed.  Finally, Plaintiff's conversion claim

(Count VI) also fails because Plaintiff does not properly allege unauthorized exercise of

ownership given the terms of the Agreements.  Accordingly, this Court should dismiss the

Complaint in its entirety for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

In 1985, Plaintiff, a construction company, opened the Account with Ocean Bank,

predecessor in interest to People's United Bank, a federal savings bank with a principal place of

business in Connecticut.  (Compl. ¶¶ 4-5.)[1]  In or around September 2003, Patco added eBanking

for Business to the Account (*id.* ¶ 6) and entered into the Agreements with Ocean Bank.[2]

To access the Account, each authorized Patco employee used an individualized company

ID and password.  (*Id.* ¶ 9.)  Plaintiff alleges that for any transfer over approximately $1,000, the

employee initiating the transfer was also required to answer two "challenge" questions.  (*Id.* ¶

10.)  In addition, the Account had a $750,000 daily limit for ACH transfers, an amount set by

Patco.  (*Id.* ¶ 20.)[3]

Beginning on May 7, 2009, cybercriminals accessed the Account over the course of

several days and transferred hundreds of thousands of dollars to other bank accounts via the

automated clearing house ("ACH") network.[4]  (*Id.* ¶¶ 24, 31, 35, 42, 44.)  Ocean Bank processed

---

[1] Plaintiff's allegations are credited here only for purposes of this motion to dismiss.  Ocean Bank reserves the right to challenge the veracity and accuracy of Plaintiff's allegations in later proceedings.

[2] Although the Agreements are not attached to the Complaint, this Court may consider a document outside the pleadings on a motion to dismiss under Rule 12(b)(6) provided that it is central to the complaint.  *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33-34 (1st Cir. 2001).  As set forth in more detail below, because the Complaint's allegations are premised on Ocean Bank's alleged failure to safeguard the funds in the Account, which is governed by the Agreements, this Court may properly consider the Agreements when ruling on this Motion to Dismiss without converting it to one for summary judgment.  *See id.*

[3] Although the ACH Agreement provides for a daily limit of $100,000, as asserted in Plaintiff's Complaint, the daily limit was subsequently raised by Plaintiff to $750,000.  (Compl. ¶ 20.)

[4] The ACH network is a nationwide electronic payments system used by more than 15,000 participating financial institutions, 7 million businesses, and an estimated one hundred forty-five million consumers.

these electronic transfers in exact accordance with the authorization procedures outlined in the

Agreements; unaware that these transfer requests were unauthorized.  (*Id.* ¶¶ 24-25.)  It was not

until May 14, 2009, a full week after the first unauthorized transfer of funds from the Account,

that Plaintiff notified Ocean Bank that the transfers were not authorized.  (*Id.* ¶ 41.)

The eBanking Agreement governs the terms and conditions for Patco's use of Ocean

Bank eBanking.[5]  The eBanking Agreement expressly exculpated Ocean Bank from liability for

ordinary negligence.  Specifically, the eBanking Agreement states in pertinent part:

> [Ocean Bank] will be liable for direct damages incurred as a result
> of our gross negligence and willful misconduct, provided,
> however, such liability will be limited to no more than six (6)
> months of service fees paid by [Patco].  [Ocean Bank] will not be
> liable for any consequential damages.

eBanking Agreement § XIV, attached as Exhibit A.

The eBanking Agreement provided that use of Patco's eBanking password constituted

Patco's signature authorization.  *Id.* § XVI.  Furthermore, Patco was on notice that Ocean Bank

would draw on overdraft credit if sufficient funds were not available to effect a funds transfer.

*Id.* § VI.A.  Finally, Patco agreed that Ocean Bank would not assume any responsibilities with

respect to Patco's use of Ocean Bank eBanking and that "[e]lectronic transmission of

confidential business and sensitive personal information" was at Patco's risk.  *Id.* §§ IV.B, IV.C.

In fact, Patco further agreed to "assume all liability and responsibility to monitor those

commercial accounts on a daily basis."  *Id.* § XIII.B.  Patco further agreed that if it objected to

any ACH debit, it would notify Ocean Bank of such "objection *on the same day* the debit

occurs."  *Id.* (emphasis added).

In conjunction with the eBanking Agreement, the ACH Agreement governed the terms of

---

[5] Patco electronically accepted the terms of the eBanking Agreement.  Additionally, Patco's use of eBanking itself constitutes acceptance of the terms.  *See* eBanking Agreement § II ("[I]f you use Ocean Bank eBanking … each party agrees to the terms and conditions stated in the Agreement.").

Patco's use of electronic funds transfers through Ocean Bank via the ACH network, a system

used by banks to transfer funds electronically between accounts.  As with the eBanking

Agreement, the ACH Agreement expressly limited Ocean Bank's liability.  Paragraph 12(a)

provided as follows:

> Bank shall be responsible only for performing the services
> expressly provided for in this Agreement, and shall be liable only
> for its gross negligence in performing those services.  Bank shall
> not be responsible for Customer's acts or omissions (including
> without limitation the amount, accuracy, timeliness of transmittal
> or due authorization of any Entry received from Customer) or
> those of any other person . . . .

ACH Agreement § 12(a), attached as Exhibit B.  The ACH Agreement further limited liability by

providing that "[i]n no event shall Bank be liable for any consequential, special, punitive or

indirect loss or damage which Customer may incur or suffer in connection with this

Agreement…."  ACH Agreement § 12(b).  Furthermore, the ACH Agreement specifically

provides for security procedures for entries transmitted by Patco to Ocean Bank.  *Id.* § 2 &

Schedule A.  Importantly, the ACH Agreement provided that Patco was responsible for

electronic transfers "purport[ed] to have been transmitted or authorized" by Patco, even though

the transfer was not authorized by Patco, "provided Bank acted in compliance with the security

procedure referred to in Schedule A…."  *Id.* § 13(a).  Finally, the ACH Agreement was fully

integrated, and the parties agreed to be governed by Connecticut law and to waive the right to a

jury for any matters arising out of the Agreements.[6]  *Id.* §§ 25, 30, 32.

Plaintiff alleges that Ocean Bank failed to employ proper security procedures to prevent

the fraudulent transfer of Patco's funds.  (Compl. ¶¶ 55, 62, 67, 71.)  Plaintiff alleges liability

pursuant to 11 M.R.S.A. §§ 4-1201, *et seq.* (Count I); negligence (Count II); breach of an

---

[6] Plaintiff attempts to claim a right to trial by jury in this matter.  However, given the contractual provision set forth
in Section 32 of the ACH Agreement waiving this right in the case of any litigation arising out of the ACH
Agreement, such a claim is without merit.  Accordingly, the demand for jury trial should be stricken.

implied contract (Count III); breach of fiduciary duty (Count IV); unjust enrichment (Count V); and conversion (Count VI).  (*Id.* ¶¶ 49-82.)  For the reasons set forth below, this Court should dismiss all counts in the Complaint for failure to state a claim upon which relief can be granted.

## ARGUMENT

This Court should dismiss Plaintiff's breach of fiduciary duty claim because the Complaint fails to allege a recognized fiduciary relationship between the parties.  In addition, this Court should dismiss Plaintiff's claims for breach of contract and unjust enrichment because an express written contract governs the relationship between the parties.  Furthermore, the exculpatory provisions and the duty of care set forth in the Agreements preclude Plaintiff's negligence claim, and the choice-of-law provision precludes Plaintiff's Maine statutory claim. Finally, this Court should dismiss Plaintiff's conversion claim because it fails properly to allege unauthorized exercise of ownership rights under the Agreements.  Accordingly, the Complaint should be dismissed in its entirety.[7]

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true the well-pleaded allegations of Plaintiff's Complaint.  A plaintiff's obligation, however, to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Factual allegations must be enough to raise a right to relief above the speculative level.  *Id.*

In addition to the Complaint, the Court may also consider documents outside of the

---

[7] Plaintiff expressly agreed to "assume all liability and responsibility to monitor its accounts on a daily basis" and notify Ocean Bank of any objections to such ACH debits "on the same day the debit occurs."  eBanking Agreement § XIII.B.  Despite such agreement, Plaintiff objected to the May 8th transaction for the first time on May 14th. (Compl. ¶¶ 39-41.)  Patco made similarly late objections for the unauthorized transactions made on May 11, 12, 13, 14 and 15.  (Compl. ¶¶ 26-35.)  Thus, for the separate and independent ground that Plaintiff failed to both monitor its accounts on a daily basis and object to questionable ACH debits on the same day they occurred, Plaintiff is precluded from bringing all of its claims against Ocean Bank.

Complaint if they are central to the Plaintiff's contentions without converting the motion into one for summary judgment under Rule 56.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2nd Cir. 2002); *see also Alternative*, 267 F.3d at 33 (considering agreement in ruling on a motion to dismiss even though document was not appended to or incorporated in complaint because the agreement's authenticity was not disputed and complaint's factual allegations were dependent upon interpretation of agreement); *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998) (same).

In the Complaint, Patco acknowledges that it began to use Ocean Bank's eBanking services for the Account but conspicuously fails to mention that the Account and its use are governed by the Agreements.  However, given that the subject matter of the Agreements – electronic transfer of funds to and from the Account – covers precisely the rights and obligations of the parties upon which the allegations depend, the Agreements are central to Plaintiff's allegations and may be considered in ruling on this motion to dismiss.  *See Kling v. Fidelity Mgmt. Trust Co.*, 270 F. Supp. 2d 121, 127-28 (D. Mass. 2003) (considering documents related to ERISA plan on motion to dismiss even though complaint did not explicitly refer to the documents because they were central to claim for breach of fiduciary duty).  Thus, Plaintiff may not pretend that the Agreements do not exist and thereby seek to prevent this Court from considering a document that details the parties' agreement with respect to the exact duties and obligations with which Plaintiff alleges Ocean Bank failed to comply.  *See Beddall*, 137 F.3d at 17 (preventing a court from inquiring into the very agreement upon which plaintiff's allegations rest would "seriously hinder recourse to Rule 12 motions, as plaintiff could thwart the consideration of a critical document merely by omitting it from the complaint").

I.     **PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM (COUNT IV) FAILS BECAUSE PLAINTIFF FAILS TO ALLEGE THE EXISTENCE OF A**

**FIDUCIARY RELATIONSHIP.**

Plaintiff's breach of fiduciary duty claim fails because Plaintiff fails to allege the existence of a fiduciary relationship between the parties.  To state a claim for breach of fiduciary duty, Plaintiff must allege "a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other."  *Macomber v. Travelers Prop. & Cas. Corp.*, 804 A.2d 180, 194 (Conn. 2002); *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 761 A.2d 1268, 1278 (Conn. 2000).[8]  Where, as here, the parties are dealing at arms' length, thereby lacking a relationship of dominance and dependence, courts have refused to recognize a fiduciary relationship as a matter of law.  *Hi-Ho*, 761 A.2d at 1279-80 (concluding that defendants did not owe a fiduciary duty to plaintiff because even though the plaintiff relied on the defendants to perform certain services under the parties' agreement, "this reliance did not confer upon the defendants the authority to exercise over the plaintiff the control, dominance or influence characteristic of fiduciary relationships").

Well over a hundred years ago, the United States Supreme Court held that a bank customer who merely holds an account, does not enjoy a fiduciary relationship with that bank. *See New York County Nat'l Bank v. Massey*, 192 U.S. 138, 145 (1904) ("It cannot be doubted that … a deposit of money upon general account with a bank creates … an ordinary debt, not a privilege or right of a fiduciary character.") (citing *Nat'l Bank of the Republic v. Millard*, 77 U.S. 152, 155 (1869)).

---

[8]  Connecticut law applies to Plaintiff's claims because the agreement between the parties provides that the laws of the state of Ocean Bank's principal place of business (Connecticut) govern.  ACH Agreement § 30.  To determine which state's laws are applicable, the First Circuit looks to the choice-of-law jurisprudence of the forum state, which in this case is Maine.  *Mariasch v. Gillette Co.*, 521 F.3d 68, 71 (1st Cir. 2008).  Maine courts look to choice-of-law rules of the state that the parties agreed would govern, in this case Connecticut, to determine whether to enforce a choice-of-law provision.  *Myslik v. Schell*, No. Civ. A. CV-04-691, 2005 WL 2714423, at * 2 (Me. Super. Ct. Mar. 28, 2005).  Connecticut courts give "effect to an express choice of law by the parties to a contract provided that it was made in good faith."  *Elgar v. Elgar*, 679 A.2d 937, 942 (Conn. 1996).  Thus, this Court must apply Connecticut law to Plaintiff's claims.

More recent courts have similarly held that the relationship between a bank and a depositing customer does not in and of itself create a fiduciary duty. *See Frigon v. Enfield Sav. & Loan Ass'n*, 486 A.2d 630, 633 (Conn. 1985) ("The fact that a bank is indebted to its account holders for the amount of the funds that they have deposited . . . imposes no special duty of care for the safekeeping of the funds on deposit."); *Southbridge Assocs., LLC v. Garofalo*, 728 A.2d 1114, 1120 (Conn. App. Ct. 1999) ("Generally there exists no fiduciary relationship merely by virtue of a borrower lender relationship between a bank and its customer."); *Marino v. Bank of Am., N.A.*, No CV075001571S, 2007 WL 2241755, at *2 (Conn. Super. Ct. July 11, 2007) ("The mere fact that an account holder has deposited funds into a bank does not automatically create a fiduciary relationship between the bank and the customer."); *Greenwoods Scholarship Found., Inc. v. Nw. Cmty. Bank*, No. CV 960558956S, 1999 WL 417939, at *4 (Conn. Super. Ct. June 4, 1999) (bank does not owe its depositors a fiduciary duty). Thus, to allow Plaintiff's fiduciary duty count to stand would turn decades of banking law on its head and create rights and liabilities in the bank/customer relationship that previously have never existed.

Indeed, a Connecticut court granted a motion to strike a breach of fiduciary duty claim in a case with facts virtually identical to this one. In *Marino v. Bank of Am., N.A.*, the plaintiff alleged that during a "short period of time from April 2004 through May 2004, money in the amount of over $200,000.00 was illegally and fraudulently withdrawn" from the customer's bank accounts at defendant bank. 2007 WL 2241755, at *1. The plaintiff also alleged that the bank knew or should have known that the withdrawals were unauthorized and failed to notify the customer of the sudden withdrawals and activity on her account. *Id.* The court granted defendant's motion to dismiss plaintiff's breach of fiduciary duty claim, stating that a relationship between a bank and a customer rarely gives rise to a fiduciary duty. *Id.* at *2. The

court held that plaintiff had failed adequately to plead "the exceptional circumstances that may give rise to the imposition of a fiduciary duty" where plaintiff alleged nothing more than a bank/customer relationship that existed for many years. *Id.* at *3.

Here, Patco neglects to allege any of the essential elements of the breach of fiduciary claim, let alone point to any factual allegations from which such elements can reasonably be inferred. Instead, Plaintiff relies on a bald assertion that "Ocean Bank owed fiduciary duties to Patco." (Compl. ¶ 70.) Indeed, Plaintiff's descriptions of the parties' interactions allege nothing beyond the ordinary bank/depositor relationship. (*See, e.g.*, Compl. ¶¶ 5-7.)

Far from alleging any unique degree of trust and confidence that Plaintiff placed on Ocean Bank or that Ocean Bank had superior knowledge, skill, or expertise to that of Plaintiff, the Complaint acknowledges that Plaintiff is a commercial entity that has been in business for nearly 25 years and that Plaintiff was responsible for protecting its funds by limiting access to the Account. (Compl. ¶¶ 4, 9-10.) Where, as here, Plaintiff alleges nothing more than a contractual relationship, the breach of fiduciary duty claim must be dismissed. *See Macomber*, 804 A.2d at 194 (affirming dismissal of breach of fiduciary duty claim where plaintiffs alleged no more than a contractual relationship with the defendants and thus made no allegations that "conceivably could give rise to a fiduciary relationship . . . much less any breach thereof"); *Hi-Ho*, 761 A.2d at 1279-80; *Frigon*, 486 A.2d at 633; *Marino*, 2007 WL 2241755, at *3 (granting motion to strike breach of fiduciary duty claim against bank where customer merely alleged that she kept her money in the bank for many years).[9]

## II.   PLAINTIFF'S BREACH OF IMPLIED CONTRACT CLAIM (COUNT III) FAILS

---

[9] To the extent that Patco's allegation that it has "banked with Ocean Bank since its early startup years" (Compl. ¶ 5) constitutes an oblique reference to a relationship of trust, this allegation is insufficient to allege the existence of a fiduciary relationship. *See Marino*, 2007 WL 2241755, at *3 (allegations that plaintiff had been customer of defendant bank for many years did "not allege the type of exceptional circumstances that would give rise to a fiduciary relationship between" customer and bank).

**BECAUSE THE EXISTENCE OF AN EXPRESS WRITTEN CONTRACT COVERING THE SUBJECT MATTER OF THE CLAIM PRECLUDES A CLAIM UNDER AN IMPLIED CONTRACT.**

Count III, Plaintiff's breach of implied contract claim also fails because there can be no recovery under an implied contract where there is an express contract covering the same subject matter. *See Janusauskas v. Fichman*, 826 A.2d 1066, 1074 n.9 (Conn. 2003) (any implied contract would have been superseded by the terms of the express contract between the parties); *H.B. Toms Tree Surgery, Inc. v. Brant*, 446 A.2d 1, 3 (Conn. 1982) ("[P]arties who have entered into controlling express contracts are bound by such contracts to the exclusion of inconsistent implied contract obligations."); *Freda v. Smith*, 111 A.2d 679, 683 (Conn. 1955) ("A true implied contract can only exist where there is no express one.").  An implied-in-fact contract is found where, in the absence of an express agreement, the plaintiff renders services under circumstances indicating that he expects to be paid therefore, and the defendant, knowing such circumstances, avails himself of the benefit of those services.  In such a case, the law implies from the circumstances a promise by the defendant to pay the plaintiff what those services are reasonably worth.  *See Janusauskas*, 826 A.2d at 1073; *H.B. Toms*, 446 A.2d at 3.  However, the existence of an express contract that governs the subject matter of the claim precludes a claim for breach of implied contract.  *See Janusauskas*, 826 A.2d at 1074 n.9; *H.B. Toms*, 446 A.2d at 3; *Freda*, 111 A.2d at 683.

Here, Plaintiff alleges that Ocean Bank breached an implied contract even though the parties' relationship is governed by the express Agreements (and, worse, without mention of those Agreements) (Compl. ¶¶ 66-67.)  The obligations in a fully integrated written contract are to be found only in the *express language of that contract.  See Janusauskas*, 826 A.2d at 1074 n.9; *H.B. Toms*, 446 A.2d at 3.  The Agreements contained an integration clause that provided

that the Agreements were the "complete and exclusive statement of the agreement between"

Patco and Ocean Bank.  ACH Agreement § 25.  Thus, the parties were operating under a fully

integrated agreement, which covered the proper security procedures for electronic transfers.

Accordingly, this Court should not permit the Plaintiff to go forward on a claim under a

purported implied contract in which Patco creates an alternative world in which Ocean Bank

allegedly agreed to protect Plaintiff's funds through different security procedures not set forth in

the Agreements.  *See Janusauskas*, 826 A.2d at 1074 n.9 (finding that plaintiff could not prevail

under implied-in-fact contract theory because implied contract "would have been superseded" by

the terms of the express contract between the parties); *H.B. Toms*, 446 A.2d at 3; *Freda*, 111

A.2d at 683.  Thus, Plaintiff's breach of implied contract claim should be dismissed.[10]

### III.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT V) FAILS BECAUSE THE EXISTENCE OF AN EXPRESS CONTRACT BETWEEN THE PARTIES BARS A CLAIM UNDER UNJUST ENRICHMENT.

Similarly, the existence of a contract between the parties precludes the Plaintiff from

maintaining its unjust enrichment claim.  Unjust enrichment applies "wherever justice requires

compensation to be given for property or services rendered" and no contractual remedy is

available.  *Meaney v. Conn. Hosp. Ass'n, Inc.*, 735 A.2d 813, 820 (Conn. 1999).  Thus, the

existence of a contractual relationship is fatal to Plaintiff's unjust enrichment claim.  *See id.* at

822-23 (express contract between parties precluded recognition of unjust enrichment claim).

Here, Plaintiff attempts to state a claim for unjust enrichment despite the existence of a

contractual relationship with Ocean Bank that covers the very subject matter of the claim.  In its

---

[10] Even if Plaintiff were to bring a breach of contract claim under the Agreements – which it has not – that claim would also fail because the Agreements contain comprehensive limitation of liability provisions that preclude Plaintiff's claims against Ocean Bank.  *See* eBanking Agreement § XIV; ACH Agreement § 12(a).  Furthermore, under the Agreements, Ocean Bank cannot be held liable for effecting the funds transfers at issue because the parties agreed that: (1) use of Patco's eBanking password constituted Patco's signature authorization; and (2) Patco was responsible for electronic transfers, even if unauthorized, if Ocean Bank complied with the agreed upon security procedure.  eBanking Agreement § XVI; ACH Agreement § 13(a).

unjust enrichment claim, Plaintiff alleges that Ocean Bank improperly drew funds on Patco's line of credit to cover the fraudulent withdrawals and has been charging interest on that account. (Compl. ¶¶ 75-76.)  Ocean Bank's right to draw upon Patco's line of credit where the Account contained insufficient funds and to charge overdraft fees is expressly set forth in the eBanking Agreement.  eBanking Agreement § VI.A.  Any claim that Ocean Bank improperly drew on Patco's line of credit must be brought as a breach of contract claim under the Agreements.  For this reason, Count V, Plaintiff's unjust enrichment claim should be dismissed as well.  *See Meaney*, 735 A.2d at 822-23 (finding that unjust enrichment claim failed as a matter of law, and contract was the exclusive source of the parties' rights, where the plaintiff did not allege that his contract with the defendants was unenforceable).

## IV.   PLAINTIFF'S NEGLIGENCE CLAIM (COUNT II) FAILS BECAUSE THE AGREEMENTS SET FORTH THE APPROPRIATE DUTY OF CARE AND EXCULPATE OCEAN BANK FROM LIABILITY FOR ORDINARY NEGLIGENCE.

This Court should dismiss Plaintiff's negligence claim because: (1) the parties expressly agreed to hold Ocean Bank liable for only gross negligence, which Plaintiff fails to claim or allege; and (2) Plaintiff fails sufficiently to allege even ordinary negligence.

Where an agreement governs the parties' relationship, *the terms of the agreement dictate the appropriate duty of care.  See Frigon*, 486 A.2d at 632-33 (savings and loan association not negligent for funds transfer where "the agreement between the parties imposed no duty of care upon the defendant bank beyond that which it exercised").  Parties are free, in turn, to agree to limit liability to only gross negligence, in which case a claim of ordinary negligence necessarily falls short.  *See Glorioso v. Police Dep't of Burlington*, 826 A.2d 271, 274 (Conn. Super. Ct. 2003) (stating that claims merely alleging negligence were at risk for dismissal where statutory immunity from liability extended to ordinary negligence but not gross negligence).  Gross

negligence is defined as "very great or excessive negligence, or as the want of, or failure to exercise, even slight or scant care or slight diligence." *Gilmore v. Pub. Storage, Inc.*, No. V040409678S, 2009 WL 765400, at *17 (Conn. Super. Ct. Feb. 25, 2009) (internal quotation marks omitted).

Here, the Agreements clearly exculpate Ocean Bank for any negligent conduct that does not rise to the level of gross negligence. Specifically, the ACH Agreement in § 12(a) states:

> Bank shall be responsible only for performing the services expressly provided for in this Agreement, and shall be liable only for its gross negligence in performing those services.

ACH Agreement § 12(a).

Similarly, Section XIV of the eBanking Agreement provides that Ocean Bank "will be liable for direct damages incurred as a result of our gross negligence and willful misconduct." eBanking Agreement § XIV. Thus, to survive dismissal, Plaintiff must claim and allege gross negligence; that is, that Ocean Bank failed to exercise even slight care. *See Gilmore*, 2009 WL 765400, at *17. However, Plaintiff has not brought a claim for "Gross Negligence." To the contrary, Plaintiff has merely claimed "Negligence" in Count II. (Compl. ¶¶ 60-64.) Accordingly, under the express terms of the Agreements, Count II should be dismissed.

Plaintiff's styling of Count II aside, Plaintiff has also failed to allege grossly negligent behavior on the part of Ocean Bank. Plaintiff's complaint is that Ocean Bank did not offer Patco *additional* security or limit account access *beyond* the security procedures already in place (Compl. ¶¶ 15-16.) These allegations cannot support a claim for gross negligence and instead, emphasize those security procedures which were in fact implemented: (1) limiting access to Plaintiff's Account to no more than five employees; (2) requiring company IDs and passwords, unique to each employee, to log in; (3) requiring users answer two challenge questions on

transfers of over $1,000; and (4) limiting daily monetary ACH transfers to $750,000.  (Compl. ¶¶ 9-10, 20.)  Plaintiff does not – and indeed cannot – allege that these security procedures fail to reach the level of even slight care, and therefore do not operate to create a liability in Ocean Bank.

Even without such limitation on liability, Plaintiff's allegations fail to describe conduct that constitutes even ordinary negligence.  The Agreements between the parties expressly set forth the security procedures with which Ocean Bank was obligated to comply.  eBanking Agreement § XVI; ACH Agreement § 2, §13(a) & Schedule A.  Fatal to Plaintiff's claim for negligence then is its failure to allege that Ocean Bank neglected to implement the agreed upon security procedures – Ocean Bank's only relevant duty under the Agreements.  This is consistent with the spirit of the Agreements in that aside from such security procedures, the duty to monitor ACH debit transactions on Patco's commercial accounts lay squarely with Patco, *not* Ocean Bank.  eBanking Agreement § XIII.B (Plaintiff expressly agreed to "assume all liability and responsibility to monitor its accounts on a daily basis").  As Plaintiff does not allege that Ocean Bank failed to exercise the degree of care set by the terms of the Agreements – care which Patco evidently failed to exercise on its own – Plaintiff's allegation that Ocean Bank acted negligently must fail.  *Frigon*, 486 A.2d at 632-33.  Under the terms of the parties' Agreements, Plaintiff's claim for negligence must be dismissed.[11]

## V.    PLAINTIFF'S CLAIM UNDER 11 M.R.S.A. § 4-1201 *ET SEQ.* (COUNT I) MUST BE DISMISSED BECAUSE CONNECTICUT LAW GOVERNS THE DISPUTE BETWEEN THE PARTIES.

---

[11] The economic loss doctrine also demands dismissal of Plaintiff's claim for negligence.  *See Flagg Energy Dev. Corp. v. General Motors Corp.*, 709 A.2d 1075, 1088 (Conn. 1998) (dismissing tort claim where claim was based on contract and damages were purely economic); *see also Dart Chart Sys. v. Kettle Brook Care Center, LLC*, No. CV095025871S, 2009 WL 1958487, at *4 (Conn. Super. Ct. June 5, 2009) (explaining that "to permit a party to a broken contract to proceed in tort where only economic losses are alleged would eviscerate the most cherished value of contract law, the power of the parties to allocate the risks of their own transactions") (citation omitted).

Plaintiff's claim alleging liability under the Maine statute must be dismissed because the governing law provision in the ACH Agreement provides that Connecticut law applies to disputes arising out of the Agreements.  Connecticut courts give "effect to an express choice of law by the parties to a contract provided that it was made in good faith."  *Elgar*, 679 A.2d at 942. Where parties have agreed that one state's laws will govern the interpretation of the agreement, one party may not bring a claim under another state's laws.  *See BRM Indus., Inc. v. Mazak Corp.*, 54 F. Supp. 2d 131, 133 (D. Conn. 1999); *Travel Servs. Network, Inc. v. Presidential Fin. Corp. of Mass.*, 959 F. Supp. 135, 146 (D. Conn. 1997).

Here, the parties agreed in the ACH Agreement that the law of the state of Ocean Bank's principal place of business – Connecticut – would govern disputes arising under the Agreements. ACH Agreement § 30.  Thus, Plaintiff may not bring a claim alleging liability under a Maine statute and Plaintiff's claim under 11 M.R.S.A. § 4-1201 *et seq.* must be dismissed.  *See BRM*, 54 F. Supp. 2d at 133 (dismissing claim under Connecticut statute where contractual choice-of-law provision provided that Kentucky law governed); *Travel Servs.*, 959 F. Supp. at 146 (finding that plaintiff could not proceed with claim under Connecticut statute where contractual choice-of-law provision provided that Massachusetts law governed).

## VI.   PLAINTIFF'S CONVERSION CLAIM (COUNT VI) MUST BE DISMISSED BECAUSE PLAINTIFF FAILS PROPERLY TO ALLEGE UNAUTHORIZED EXERCISE OF OWNERSHIP UNDER THE AGREEMENTS.

Finally, this Court must dismiss Plaintiff's conversion claim because it fails to allege that Ocean Bank's drawing upon Patco's line of credit and collection of interest on such funds was unauthorized under the Agreements.  To state a claim for conversion, Plaintiff must allege that Ocean Bank, without authorization, assumed and exercised ownership over property belonging to Plaintiff, to the exclusion of Plaintiff's rights.  *Hi-Ho*, 761 A.2d at 1281.  An essential element

of the tort of conversion is that the use of another's property was unauthorized or wrongful.  *Id.*
at 1282.  Where, as here, the Agreements authorize the exercise of ownership, a conversion
claim must be dismissed.  *Id.* at 1283 (finding that agreement authorizing defendants' use of
plaintiff's property was fatal to plaintiff's cause of action for conversion); *DeVito v. Farmington
Sav. Bank*, No. CV-91-0393681-S, 1995 WL 118456, at *2 (Conn. Super. Ct. Mar. 9, 1995)
(finding that conversion claim failed where defendant bank's action was authorized by the
account agreement).[12]

Plaintiff's conversion claim fails because the eBanking Agreement expressly notified
Patco that Ocean Bank would draw upon Patco's line of credit where the Account contained
insufficient funds and to charge overdraft fees.  eBanking Agreement § VI.A.  As Ocean Bank
followed the security procedures set forth in the Agreements when it transferred Plaintiff's funds,
Ocean Bank's actions in drawing upon Patco's line of credit and collecting interest on such funds
was authorized and proper under the Agreements.  As a result, Plaintiff's conversion claim must
be dismissed.  *See Hi-Ho*, 761 A.2d at 1283; *DeVito*, 1995 WL 118456, at *2.

Furthermore, Plaintiff's conversion claim is essentially a piggy-back claim that is
dependent on the survival of the other claims in the Complaint.  As discussed above, all of
Plaintiff's other claims fail, and as a result, Plaintiff cannot allege that Patco's actions were a
wrongful taking.  *See Hi-Ho*, 761 A.2d at 1283 (where "plaintiff relied upon the same specific
evidence to support its claim of breach of agreement as it did for its claims of conversion" and
breach of contract claim failed, cause of action for conversion also failed).  Accordingly, this
Court should dismiss Count VI and Plaintiff's remaining claims in their entirety.

## CONCLUSION

---

[12] Here, as the claim of conversion falls under the category of tort, the economic loss doctrine also requires dismissal
of Plaintiff's claim.  *See Flagg Energy Dev. Corp.* 709 A.2d at 1088; *Dart Chart Sys.*, 2009 WL 1958487, at *4.

For the reasons stated above, Ocean Bank respectfully requests that this Court dismiss the

Complaint in its entirety for failure to state a claim upon which relief can be granted.

Respectfully submitted,

PEOPLE'S UNITED BANK

By its attorneys,


/s/      John F. Lambert, Jr.
John F. Lambert, Jr.
Lambert Coffin Haenn
P.O. Box 15215
477 Congress Street
Portland, Me 04112
(207) 874-4000
jlambert@lambertcoffin.com


/s/      Brenda R. Sharton
Brenda R. Sharton (*pro hac vice*)
Karen G. Hong (*pro hac vice*)
Francis G. Kelleher (Maine Bar No. 008516)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109-2881
(617) 570-1000
bsharton@goodwinprocter.com
khong@goodwinprocter.com
fkelleher@goodwinprocter.com

Dated: November 3, 2009


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 3, 2009.

/s/      Brenda R. Sharton