# EXHIBIT B

# OCEAN NATIONAL BANK
## AUTOMATED CLEARING HOUSE AGREEMENT

This Agreement (including Schedule A attached hereto and incorporated herein by this reference), each dated as of **SEPTEMBER, 5, 2003** , is entered between

**Patco Construction, Inc.**
(the "Customer") and Ocean National Bank ( the "Bank").

### RECITALS

A. Customer wishes to initiate Entries pursuant to the terms of this Agreement, and the rules of the National Automated Clearing House (the "Rules"), and Bank is willing to act as an Originating Depository Financial Institution with respect to such Entries.

B. Unless otherwise defined herein, capitalized terms shall have the meanings provided in the Rules. The term "Entries", and individually an "Entry", shall have the meanings provided in the Rules and shall also mean the data received from Customer hereunder from which Bank prepares Entries.

### AGREEMENT

1. **Transmittal of Entries by Customer.** Customer shall transmit Entries to Bank to the location(s) and in compliance with the formatting and other requirements set forth in Schedule A attached hereto.

2. **Security Procedure.** Customer and Bank shall comply with the security procedure requirements described in Schedule A attached hereto with respect to Entries transmitted by Customer to Bank.

3. **Processing Transmittal and Settlement by Bank.**

(a) Except as provided in Sections 4, 5, and 6, Bank shall (i) process Entries received from Customer to conform with the file specifications set forth in the Rules, (ii) transmit such Entries as an Originating Depository Financial Institution to Bank's chosen Automated Clearing House ("ACH") operator (the "ACH Operator") acting as an ACH processor, and (iii) settle for such Entries as provided in the Rules.

(b) Bank shall transmit such Entries to the ACH Operator by the deadline of the ACH Operator one (1) or two (2) business days prior to the Effective Entry Date shown in such Entries, provided (i) such Entries are received by Bank's related cut-off time set forth in Schedule A on a business day, (ii) the Effective Entry Date is at least one (1) or two (2) business days after such business day as set forth in the Rules, and (iii) the ACH Operator is open for business on such business day. For purposes of this Agreement, (a) a "business day" is a day on which Bank is open to the public for carrying on substantially all of its business (other than on Saturday or Sunday), and (b) Entries shall be deemed receivable by Bank when the transmission is completed or the tape, if applicable, is received in compliance with any related security procedure provided for herein and at the location set forth in Schedule A.

(c) If any of the requirements of clause (i), (ii) or (iii) of Section 3(b) are not met, Bank shall use reasonable efforts to transmit such Entries to the ACH Operator by the next deposit deadline of the ACH Operator which is a business day and a day on which the ACH Operator is open for business.

4. **On-Us Entries.** Except as provided in Section 5, in the case of an Entry received for an account maintained with Bank (an "On-Us Entry), Bank shall credit or debit the Receiver's account in the amount of such Entry on the Effective Entry Date contained in such Entry, provided the requirements set for in clause (i) of Section 3(b) are met. If those requirements are not met, Bank shall use reasonable efforts to credit or debit the Receiver's account in the amount of such Entry on the next business day following such Effective Entry Date.

5. **Rejection of Entries.** Bank shall have the right to reject any Entry, batch, or file of Entries which does not comply with the requirements of Sections 1 or 2. Bank shall have the right to reject any On-Us Entry for any reason for which an Entry may be rejected or returned under the Rules. Bank shall further have the right to reject any Entry if Customer has failed to comply with its account balance obligations under Section 9. Bank shall release notification to Customer by its established procedures of such rejection no later than the business day such Entry would otherwise have been transmitted by Bank to the ACH Operator or, in the case of an On-Us Entry, its effective Entry Date. Bank shall have no liability to Customer by reason of the rejection of any such Entry or the fact that such notice is not given at an earlier time than that provided for herein.

6. **Deletions by Customer .** Customer shall have no right to the deletion of any Entry after its distribution by Bank, However, Bank shall use reasonable efforts to act on a request by Customer for deletion of an Entry prior to transmitting it to the ACH Operator, or in the case of an On-Us Entry, prior to distribution to Bank's deposit system for crediting or debiting a Receiver's account, provided such request complies with the security procedure set forth in Schedule A for deletion of data, but Bank shall have no liability if such deletion is not effected.

7. **Notice of Returned Entries.** Bank shall release notification to Customer by its established procedures of the receipt of a returned Entry from the ACH Operator no later than one(1) business day after the business day of such receipt. Unless Customer and Bank have agreed in advance that returned Entries eligible for resubmission shall be retransmitted by Bank, or except for an Entry retransmitted by Customer in accordance with the requirements of Section 1, Bank shall have no obligation to retransmit a returned Entry with respect to the original Entry.

8. **Payment.** Customer shall pay Bank the amount of each Entry transmitted By Bank pursuant to this Agreement at such time on the Settlement Date or, with respect to the date of transmittal by Bank of such Entries, as Bank, in its discretion, may determine. Bank may, in its discretion, debit from Customer's account maintained at Bank, or place a hold and reserve against the Customer's account(s) maintained at Bank (the "Account"), the amount of the Entries on the date of transmittal by Customer of such Entries.

9. **The Account.** Bank may, without prior notice or demand, obtain payment of any amount due and payable to it under this Agreement by debiting the Account of Customer, including for any and all returned or adjustment Entries, as applicable, and shall credit the Account for any amount received by Bank by reason of the return of an Entry transmitted by Bank for which Bank has previously received payment from Customer. Customer shall at all times maintain a balance of available funds in the Account to cover Customer's obligations under this Agreement. Customer agrees that Bank may, if necessary, debit any account maintained by Customer with Bank or any affiliate of Bank or that Bank may set off against any amount it owes to Customer, in order to obtain payment of Customer's obligations under this Agreement.

10. **Account Reconciliation.** Entries transmitted by Bank or credited to a Receiver's account maintained with Bank will be reflected on Customer's periodic statement issued by Bank with respect to the Account pursuant to the agreement between Bank and Customer. Customer agrees to notify Bank promptly of any discrepancy between Customer's records and the information shown on any such periodic statement. If Customer fails to notify Bank of any such discrepancy promptly within receipt of a periodic statement, Customer agrees that Bank shall not be liable for any other losses resulting from Customer's failure to give such notice or any loss of interest with respect to an Entry shown on such periodic statement.

11. **Customer Representations and Agreement: Indemnity.** Customer represents to Bank and agrees that (i) each person shown as the Receiver of an Entry received by Bank from Customer has authorized the initiation of such Entry and the crediting or debiting of its account in the amount and on the Effective Date shown on such Entry, (ii) such authorization is operative at the time of transmittal or crediting or debiting by Bank as provided herein, (iii) Customer shall provide copies of any and all such authorizations immediately upon request by Bank, (iv) Entries transmitted to Bank by Customer are limited to those types of Entries set forth in Schedule A, (v) Customer shall perform its obligations under this Agreement in accordance with all applicable laws and regulations, and (vi) Customer shall be bound by, and comply with, the Rules including without limitation the provision thereof making payment of an Entry by the Receiving Depository Financial Institution to the Receiver provisional until receipt by the Receiving Depository Financial Institution of final settlement for such Entry. Furthermore, Customer specifically acknowledges that it has received notice of that Rule and of the fact that, if such settlement is not received, the Receiving Depository Financial institution shall be entitled to refund from the Receiver of the amount credited and Customer shall not be deemed to have paid the Receiver the amount of the Entry. Customer further recognizes that, as an account holder at Bank, the provision may also apply to the Customer as a Receiver. Customer shall defend, indemnify, save and hold Bank harmless, from and against any and all loss, liability, damage or expense (including attorney's fees and expenses) resulting from or arising out of any breach of any of the foregoing representations or agreements.

12. **Liability; Limitation of Liability; Indemnify; Force Majeure.**

(a) Bank shall be responsible only for performing the services expressly provided for in this Agreement, and shall be liable only for its gross negligence in performing those services. Bank shall not be responsible for Customer's acts or omissions (including without limitation the amount, accuracy, timeliness of transmittal or due authorization of any Entry received from Customer) or those of any other person, including without limitation any Federal Reserve Bank or other ACH Operator or transmission or communication facility, any Receiver or Receiving Depository Financial Institution (including without limitation the return of an Entry by such Receiver or Receiving Depository Financial Institution), and no such person shall be deemed to be the Bank's agent. Customer agrees to defend, indemnify, save and hold Bank harmless, from and against any loss, liability damage or expense (including attorney's fees and expenses) resulting from or arising out of any claim of any person that Bank is responsible for, any act or omission of Customer, or any other person described in this Section 12(a).

(b) In no event shall Bank be liable for any consequential, special, punitive or indirect loss or damage which Customer may incur or suffer in connection with this Agreement, including without limitation loss or damage from subsequent wrongful dishonor resulting from Bank's act or omissions pursuant to this Agreement.

(c) Without limiting the generality of the foregoing provisions, Bank shall be excused from failing to act or delay in acting if such failure or delay is caused by legal constraint, interruption of transmission or interruption of communication facilities, equipment failure, war, emergency conditions or other circumstances beyond Bank's control. In addition, Bank shall be excused from failing to transmit or delay in transmitting an Entry if such transmittal would result in Bank's having exceeded any limitation upon intra-day net funds positions established pursuant to present or future Federal Reserve guidelines or in Bank's otherwise violating any provision of any present or future internal risk control program or any rule or regulation of any U.S. government regulatory authority.

(d) Subject to the foregoing limitations, Bank's liability for loss of interest resulting from its error or delay shall be calculated by using a rate equal to the average Federal Funds rate established by the Federal Reserve Bank of Boston for the period involved. At Bank's option, payment of such interest may be made by crediting an Account of Customer.

**THIS AGREEMENT IS SUBJECT TO, AND CUSTOMER AGREES TO BE BOUND BY, THE ADDITIONAL PROVISIONS SET FORTH ON THE REVERSE SIDE HEREOF, THE SAME BEING INCORPORATED HEREIN BY REFERENCE.**

CUSTOMER: **Patco Construction, Inc.**

TAX ID: **01-0448313**

By: _____

It's _____

BANK: *Ocean National Bank*

By: _____

By: *Robert M. Rizzo*

It's *Vice President*          Officer #

**Original – ACH Operations**          **Pink – Account Manager**          **Yellow – Customer**

**FORM 5041-15**          **REVISED 03/05/02**

13. **Compliance with Security Procedures**.

(a) If an entry (or a request for deletion of an Entry) received by Bank purports to have been transmitted or authorized by Customer, it will be deemed effective at Customer's Entry (or request) and Customer shall be obligated to pay Bank the amount of such Entry as provided herein even though the Entry (or request) was not authorized by Customer, provided Bank acted in compliance with the security procedure referred to in Schedule A with respect to such Entry. If signature comparison is to be used as part of that security procedure, Bank shall be deemed to have complied with that part of such procedure if it compares the signature accompanying a file of Entries received with the signature of an authorized representative of Customer (an "Authorized Representative") and, on the basis of such comparison, believes the signature accompanying such file to be that of such Authorized Representative. The names titles and facsimile signatures of the Authorized Representatives are shown in Schedule A.

(b) If an Entry received by Bank was transmitted or authorized by Customer, Customer shall be obligated to pay the amount of the Entry as provided herein, whether or not Bank complied with the security procedure referred to in Schedule A with respect to that Entry and whether or not that Entry was erroneous in any respect or that error would have been detected if Bank had complied with such procedure.

14. **Inconsistency of Name and Account Number**. Customer acknowledges and agrees that, if any Entry describes the Receiver inconsistently by name and account number, payment of the Entry transmitted by Bank to the Receiving Depository Financial Institution might be made by the Receiving Depository Financial Institution (or by Bank in the case of an On-Us Entry) on the basis of the account number in the entry detail record even if it identifies a person different from the name Receiver, and the Customer's obligation to pay the amount of the Entry to Bank is not excused in such circumstances.

15. **Payment for Services**. Customer shall pay Bank the charges for the services provided for herein. Such charges do not include, and Customer shall be responsible for payment of, any sales, use, excise, value added, utility or other similar taxes relating to the services provided for herein, or any fees or charges provided for in the Agreement between Bank and Customer with respect to the Account (the "Account Agreement").

16. **Amendments**. From time to time, Bank may amend any of the terms and conditions contained in this Agreement, including without limitation, any cut-off time, any business day, and any part of Schedule A attached hereto. Such amendments shall become effective upon receipt of notice by Customer or such later date as may be stated in Bank's notice to Customer.

17. **Security Interest**. To secure repayment of all amounts owed to Bank by Customer hereunder., customer grants Bank a security interest in the Account and all amounts held on deposit therein, all of the Customer's now owned or hereafter acquired interest in all property in which Bank is, at any time, granted a lien for any liability, obligation or indebtedness owed Bank, and all property of Customer in possession of Bank.

18. **Events of Default**. The following shall be considered to be Events of Default hereunder:

(a) any representation or warranty made by Customer herein or in any applicable documents related hereto is incorrect when made or reaffirmed; or
(b) Customer defaults in the payment of any liability or obligation of Customer to Bank when due and payable arising under this Agreement or any other agreement between Customer and Bank;
(c) Customer fails to observe or perform any covenant, condition or agreement herein; or
(d) A court enters a decree or order for relief with respect to Customer in an involuntary case under any applicable bankruptcy, insolvency, or other similar law then in effect, or appoints a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of Customer or any substantial part of its property, or orders with wind-up or liquidation of its affairs; or a petition initiating an involuntary case under any such bankruptcy, insolvency or similar law is filed and is pending for thirty (30) days without dismissal; or
(e) Customer commences a voluntary case under any applicable bankruptcy, insolvency or other similar law in effect, or makes any general assignment for the benefit of creditors, or fails generally to pay is debt as such debits become due, or takes corporate action in furtherance of any of the foregoing; or
(f) Any event occurs which might, in Bank's opinion, have a material adverse effect on Customer's financial condition, operations, assets or prospects; or
(g) The death or dissolution of Customer or any of the Guarantors; or
(h) The commencement of any foreclosure proceedings, proceedings in aid of execution, attachment actions, levies against, or the filing by any taxing authority of a lien against any Account or any of the collateral or any property securing the repayment of any amounts outstanding under this Agreement.

19. **Remedies**. If any Event of Default occurs, Bank may (i) cease providing ACH services hereunder, (ii) exercise any and all rights and remedies provided by applicable law, and/or (iii) proceed to realize upon any applicable collateral securing Customer's obligations.

20. **Setoff**. If any Event of Default should occur, Bank is authorized, without notice to Customer, to offset and apply to all or any part of the obligations all moneys, credits and other property of any nature whatsoever of Customer now or at any time hereafter in the possession of, in transit to or from, under the control or custody of, or on deposit with Bank or any affiliate of Bank (whether held by Customer individually or jointly with another party), including but not limited to certificates of deposit.

21. **Representations and Warranties**. Customer hereby warrants and represents to Bank the following:

(a) Organization and Qualification. Customer is a duly organized, validly existing legal entity in good standing under the laws of the state of its incorporation, has the power and authority (corporate and otherwise) to carry on it business and to enter into and perform this Agreement and its qualified and licensed to do business in each jurisdiction in which such qualification or licensing is required. All information provided to Bank with respect to Customer and its operations is true and correct.

(b) Due Authorization. The execution, delivery and performance by Customer of this Agreement, has been duly authorized by all necessary corporate or partnership action, and will not contravene any law or any governmental rule or order binding on Customer, or the formation documents of Customer, nor violate any agreement or instrument by which Customer is bound. Customer has duly executed and delivered this Agreement and it is valid and binding on the obligations of Customer and is enforceable according to its terms except as limited by equitable principles and by bankruptcy, insolvency or similar laws affecting the rights of creditors generally. No notice to, or consent by, any governmental body is needed in connection with this transaction.

22. **Notices, Instructions, Etc.**

(a) Except as otherwise expressly provided herein, Bank shall not be required to act upon any notice or instruction received from Customer or any other person, or to provide any notice or advice to Customer or any other person with respect to any matter.

(b) Bank shall be entitled to rely on any written notice or other written communication believed by it in good faith to be genuine and to have been signed by an Authorized Representative, and any such communication shall be deemed to have been signed by such person. The names and signatures of Authorized Representative are set forth in Schedule A attached hereto. Customer may add or delete any Authorized Representative by written notice to Bank signed by an Authorized Representative other than that being added or deleted. Such notice shall be effective on the second (2nd) business day following the business day of Bank's receipt thereof.

(c) Except as otherwise expressly provided herein, any written notice or other written communication required or permitted to be given under this Agreement shall be delivered, or sent by United States registered or certified mail, postage prepaid, or by express carrier:

   - to Bank addressed as:            - and by U.S. Mail to Customer, addressed as:

      Ocean National Bank

      Attention: ACH Operations Manager

      2 Burlington Square / Burlington, Vermont 05401

unless another address is substituted by notice delivered or sent as provided herein. Bank may also in its discretion deliver certain notices via facsimile transmission and/or Bank may request that certain notices be sent via facsimile transmission. Except as otherwise expressly provided herein, any such notice shall be deemed given when received.

23. **Data Retention**. Customer shall retain data on file adequate to permit remaking of Entries for five (5) business days following the date of their transmittal by Bank as provided herein, and shall provide such Data to Bank upon its request.

24. **Termination**. Customer may terminate this Agreement at any time. Such termination shall be effective on the thirtieth (30th) day following the day of Bank's receipt of written notice of such termination or such later date as is specified in that notice. Bank reserves the right to terminate this Agreement immediately upon providing written notice of such termination to Customer. Any termination of this Agreement shall not affect any of Customer's obligations arising prior to such termination.

25. **Entire Agreement**. This Agreement (including the Schedule A attached hereto), together with the Account Agreement, is the complete and exclusive statement of the agreement between Bank and Customer with respect to the subject matter hereof and supersedes any prior agreement(s) between Bank and Customer with respect to such subject matter. In the event of any inconsistency between the terms of this Agreement and the Account Agreement, the terms of this Agreement shall govern. In the event performance of the services provided herein in accordance with the terms of this Agreement would result in a violation of any present or future statute, regulation or government policy to which Bank is subject, and which governs or affects the transactions contemplated by this Agreement, then this Agreement shall be deemed amended to the extent necessary to comply with such statute, regulation or policy, and Bank shall incur no liability to Customer as a result of such violation or amendment.

26. **Severability**. The invalidity or unenforceability of any provision of this Agreement shall not affect or impair any other provision.

27. **Non- Assignment**. Customer may not assign this Agreement or any of the rights or duties hereunder to any person without Bank's prior written consent.

28. **Binding Agreement: Benefit**. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, successors and permitted assigns.

29. **Amendments**. In addition to Section 16 above, this Agreement may be amended in writing executed by both parties hereto. This Agreement is not for the benefit of any other person, and no other person shall have any right against Bank or Customer hereunder.

30. **Governing Law**. This Agreement shall be construed in accordance with and governed by the laws of the State where Bank's principal place of business is located.

31. **Venue**. Customer agrees that the state and federal courts in York County, Maine, or any other court in which Bank initiates proceedings have exclusive jurisdiction over all matters arising out of this Agreement, and that service of process in any such proceeding will be effective if mailed to Customer at its address described in Section 22 of this Agreement. Customer hereby waives any right to object to the location of such proceeding.

32. **Jury Waiver**. Bank and customer hereby waive the right to a trial by jury of any matters arising out of this agreement or the transaction contemplated hereby.

**Original – ACH Operations**        **Pink – Account Manager**        **Yellow – Customer**

**FORM 5041-15**        **REVISED 03/05/02**

COMPANY NAME:
*Patco Construction Inc.*



# AUTOMATED CLEARING HOUSE AGREEMENT – SCHEDULE A
## OPERATING AND SECURITY PROCEDURES

### FORMATS:

Formats are provided by Bank to all new customers, upon request, as derived from the **National Automated Clearing House Association ("NACHA")**
**ACH RULES.**

### TYPES OF ORIGINATED ENTRIES:

*PPD*        *CCD*

**PENALTY:** Authorization for Originating ACH Entries may be terminated immediately if any Entries different from the above are performed.

### DEADLINES:

*9:30 A.M. For Next 24 hours*

Customer will deliver data to Bank by ____*4:00pm* — *For Next 48 hours*____ for data transmission and 2:00p.m. (Eastern Standard Time) for other media.
Companies are encouraged however to deliver data as early as feasible to facilitate any necessary error resolution. All other media are to be delivered to:

Ocean National Bank
Attention: ACH Operations Manager
2 Burlington Square
Burlington, Vermont 05401

Ocean National Bank will accept requests of deletions until 4:30 p.m. (Eastern Standard Time), if the Entries have not yet been distributed to the ACH Network. Instructions for deletion requests (which must be signed by an Authorized Representative) are provided upon request.

### SCHEDULES:

Customer shall provide to Bank a schedule of all dates the Customer anticipates it will originate Entries prior to submission of Customer's first live Entries for the remaining calendar year, and by December 1st of each year for the following calendar year. Periodic updates to these schedules will be accepted in writing from an Authorized Representative as set for below.

If Bank has not received Entries from Customer on a scheduled delivery date, Bank may contact Customer for additional information on the status of the Entries. It shall be within Bank's sole discretion to accept Entries which are not received on the scheduled delivery date. If Bank does choose to accept such Entries it may require a call back or facsimile from an Authorized Representative to verify the contents of the Entries received. If Bank cannot obtain such verification, it is under no obligation to process the Entries.

### SECURITY PROCEDURES / NOTIFICATION:

If Entries are sent to Bank via electronic transmission (other than Electronic Banking, eBanking, or Tran$act), or other media, Customer will fax Bank at **(802) 951-7583**, providing the Bank with the total dollars and transactions contained in each file of the transmission. If Entries are received by the Bank via electronic transmission (other than Electronic Banking, eBanking, or Tran$act), or other media the Customer will receive a call from a Bank Representative, on a recorded line. The Bank Representative must speak with an Authorized Representative to verify file totals.

If Entries are sent to Bank by other media, Customer will, in addition to providing the above referenced totals by fax, complete a transmittal register detailing the number of Entries and the total dollars of each file and deliver this transmittal with the other media. This transmittal register must be signed by an Authorized Representative.

If Bank does not receive this information, Bank may elect not to process respective files until notification is received.

### LIMITS:

Bank may establish a maximum dollar limit for total outstanding exposure for Customer. If the total amount of outstanding Entries exceeds the designated dollar limit set forth below, Bank may elect not to process the Entries.

Total Outstanding Exposure Limit: ____*$100,000.00*____

### AUTHORIZED REPRESENTATIVES:

Name:                                   Signature:                                   Title:

*Greg Patterson*                                                                    *President*

*MARK Patterson*                         *[signature]*                         *Treasurer*

### SPECIAL FUNDING / COLLATERAL INSTRUCTIONS: