**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| PATCO CONSTRUCTION COMPANY, INC.,   ) | |
|   ) | |
|     Plaintiff,   ) | |
|   ) | |
|        v.   ) | Civil Action No. 2:09-cv-00503-DBH |
|   ) | |
| PEOPLE'S UNITED BANK d/b/a OCEAN   ) | |
| BANK,   ) | |
|   ) | |
|     Defendant.   ) | |

**PLAINTIFF PATCO CONSTRUCTION COMPANY, INC.'S**
**MOTION TO DISMISS COUNTERCLAIMS WITH**
**INCORPORATED MEMORANDUM OF LAW**

Plaintiff Patco Construction Company, Inc. ("Patco"), by and through its undersigned counsel, hereby moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the counterclaims filed by Defendant People's United Bank d/b/a Ocean Bank ("Ocean Bank") in the above-captioned action. The grounds for this motion are set forth more fully below.

<u>INTRODUCTION</u>

Ocean Bank is attempting to turn boilerplate indemnification provisions into a claim for its attorney's fees in this case. The effort may earn points for creativity, but it is based on a fundamental misunderstanding by the bank of the nature and scope of indemnity agreements. It also is based on a misconstruction of the language of the indemnification provisions at issue, read in the proper context of the agreements in which they are found. Indemnity provisions generally do not give rise to claims *between the parties to the agreement*, but instead obligate the indemnitor to protect the indemnitee against claims *brought by third parties*. There are no such third-party claims in this case for which Ocean Bank is seeking indemnification. Instead, Patco has brought direct, first-party claims that arise out of the bank's failure to employ commercially reasonable security measures to guard against unauthorized withdrawals from Patco's checking

account.  The concept of indemnification simply does not come into play.  Ocean Bank's attempt

to stretch boilerplate indemnity language to fit this situation fails as a matter of law.

<u>**FACTS AS ALLEGED BY OCEAN BANK**</u>

**Count I:  Breach of Contract with Regard to the eBanking Agreement**

Ocean Bank has attached as Exhibit D to its counterclaims an undated document entitled

"Ocean Bank eBanking and Bill Payment Agreement" (the "Modified eBanking Agreement").

This agreement forms the basis of Count I of the bank's counterclaims.  Section IV(A) of this

agreement provides:

**IV.   Terms and Conditions**

A.  You agree to indemnify, hold harmless and defend Ocean Bank from and
against any and all claims, actions, suits, judgments and expenses
(including court costs and reasonable attorney, accountant and expert
witness fees) at your expense, arising from your failure to abide by these
restrictions on the use of Ocean Bank eBanking.  You also agree that the
following uses of Ocean Bank eBanking are prohibited:
1.  Unauthorized communication of any charge or credit card information
belonging to any other person or entity;
2.  Unauthorized communication of any information concerning any
password or other online access number, code, or identification or any
other proprietary information belonging to any other person or entity;
3.  Use of Ocean Bank eBanking in violation of any telecommunication,
postal or other federal, state or local laws or regulations or in
furtherance or commission of any crime or other unlawful or improper
purpose.

Modified eBanking Agreement § IV(A).

Later in the agreement, in Section XIII, the following language appears:

**XIII.   Customer's Responsibility**

You are responsible for all transfers and bill payments you authorize using
Ocean Bank eBanking.  If you permit other persons to use your password to
perform transactions, you are responsible for any transactions they authorize from
your accounts.
A.  You should notify us immediately if you believe any of your accounts
have been accessed or your password has been used without your

2

permission.   Contacting Ocean Bank right away will help you reduce possible losses.

B. If you allow ACH debit transactions on your consumer accounts, you have certain rights and privileges that are set forth in the Consumer disclosures. If you choose to receive ACH debit transactions on your commercial accounts, you assume all liability and responsibility to monitor those commercial accounts on a daily basis.  In the event that you object to any ACH debit, you agree to notify us of your objection on the same day the debit occurs.

C. There may be other exceptions to your liability as stated in the Consumer Disclosures, the Commercial Disclosures or provided by law.

Modified eBanking Agreement § XIII.

Ocean Bank alleges that Patco failed to monitor its account on a daily basis, Counterclaims ¶¶ 43, 57, and that "[u]nder the Modified eBanking Agreement, Patco agreed to indemnify and hold harmless Ocean Bank from and against any and all claims, actions, suits, judgments and expenses, including court costs and reasonable attorneys' fees, arising from Patco's failure to monitor its Account on a daily basis."  *Id.* ¶ 55.  Taking the next steps in its reasoning, Ocean Bank alleges: (1) "As a result of Patco's failure to monitor its Account on a daily basis, approximately $588,851 was withdrawn from Patco's Account" and (2) "As a result of $588,851 being withdrawn from Patco's Account, Patco has commenced this litigation against Ocean Bank."  *Id.* ¶¶ 59, 60.  Although Count I is styled by Ocean Bank as a "Breach of Contract" claim, it more accurately is described as a claim for contractual indemnification.

### Count II:  Breach of Contract with Regard to the ACH Agreement

Ocean Bank has attached as Exhibit A to its counterclaims a document entitled "Ocean National Bank Automated Clearing House Agreement" (the "ACH Agreement").   This agreement forms the basis of Count II of the bank's counterclaims.  The agreement defines Patco as the "Customer" and recites that "Customer wishes to initiate Entries pursuant to the terms of this Agreement, . . . and Bank is willing to act as Originating Depository Financial Institution

with respect to such Entries."   ACH Agreement § B.   Section 11 of the ACH Agreement

provides in part:

> Customer represents to Bank and agrees that (i) each person shown as the
> Receiver of an Entry received by Bank from Customer has authorized the
> initiation of such Entry and the crediting or debiting of its account in the amount
> and on the Effective Date shown on such Entry, (ii) such authorization is
> operative at the time of transmittal or crediting or debiting by Bank as provided
> herein, (iii) Customer shall provide copies of any and all such authorizations
> immediately upon request by Bank . . . .

ACH Agreement § 11.

> Section 12(a) of the ACH Agreement states in part:

> Bank shall not be responsible for Customer's acts or omissions (including without
> limitation the amount, accuracy, timeliness of transmittal or due authorization of
> any Entry received from Customer) or those of any other person, including
> without limitation any Federal Reserve Bank or other ACH Operator or
> transmission or communication facility, any Receiver or Receiving Depository
> Financial Institution (including without limitation the return of an Entry by such
> Receiver or Receiving Depository Financial Institution) . . . .

*Id.* § 12(a).

> Section 12(a) also provides:

> Customer agrees to defend, indemnify, save and hold Bank harmless, from and
> against any loss, liability damage or expense (including attorney's fees and
> expenses) resulting from or arising out of any claim of any person that Bank is
> responsible for, [sic] any act or omission of Customer, or any other person
> described in this Section 12(a).

*Id.*

Ocean Bank alleges that "Patco's failure adequately to monitor its Account for due

authorization of any withdrawals constituted an omission," Counterclaims ¶ 70, and that under

the ACH Agreement Patco "agreed to indemnify, save and hold Ocean Bank harmless from and

against any loss, liability damage or expense, including attorney's fees and expenses, resulting

from or arising out of any claim of any person that Ocean Bank is responsible for any act or

omission of Patco or any other person." *Id.* ¶ 69.  Ocean Bank then alleges: (1) "As a result of Patco's failure adequately to monitor its Account, approximately $588,851 was withdrawn from Patco's Account" and (2) "As a result of $588,851 being withdrawn from Patco's Account, Patco has commenced this litigation against Ocean Bank." *Id.* ¶¶ 76, 77.  As with Count I, although Count II is styled by Ocean Bank as a "Breach of Contract" claim, it more accurately is described as a claim for contractual indemnification.

## LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff.  *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).  At the same time, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to show that its claims of entitlement to relief are plausible, not merely conceivable.  *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1967-69 (2007); *ACA Fin. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008) (*citing Twombly*).  Mere recitation by the plaintiff of the elements of a cause of action and unsupported allegations of an implausible factual theory will not survive dismissal.  *Twombly*, 127 S.Ct at 1965.

## ARGUMENT

### I.   The Indemnity Provisions On Which Ocean Bank Relies do Not Apply to Claims Between Ocean Bank and Patco

Ocean Bank's attempt to stretch the scope of the boilerplate indemnification language in the agreements to encompass Patco's direct claims in this case is at odds with the logic and rationale underlying the legal concept of indemnity.  Indemnity is "based on the premise that an action for indemnification is one in which one party seeks reimbursement from another party for losses incurred in connection with the first party's liability to a third party."  *See, e.g., Amoco Oil*

*Co. v. Liberty Auto and Electric Co.*, 810 A.2d 259, 263 (Conn. 2002).  In the *Amoco* case, an

indemnitee (Amoco) sought damages from its indemnitor (Liberty Auto) based on a claim that it

did not properly perform some tank installation work pursuant to the parties' contract.  *Id.* at

261-62.  The relevant indemnification language provided:

> Contractor shall reimburse Company for, and indemnify Company and hold it
> harmless from and against any and all loss, costs (including reimbursement of all
> attorney fees and other costs of defense), damage, expense, claims . . ., suits and
> liability on account of . . . damage to, or loss or destruction of any property . . .
> arising directly or indirectly out of or in connection with the performance of this
> Contract.

*Id.* at 261.

The court rejected Amoco's argument that the indemnity provision enabled it to seek

indemnification from Liberty Auto based on its purported failure to perform the contract work.

The court observed:  "[T]he concept of indemnity usually involves an indemnitor, *A*, and an

indemnitee, *B*, who enter into a contract whereby *A* agrees to indemnify *B* for any money *B*

becomes legally obligated to pay to a third party."  *Id.* at 263.  Applying that concept, the court

concluded:

> Amoco's claim for losses incurred as a result of damage to its own property, not
> as a result of third party liability, is not a claim for indemnification at all but,
> rather, a claim for damages for its own losses arising out of Liberty's allegedly
> negligent and improper installation of the tanks.

*Id.* at 265.  *See also* 42 C.J.S. *Indemnity* § 1 (2007) ("An indemnity provision generally does not

apply to claims between the parties to the agreement, but obligates the indemnitor to protect the

indemnitee against claims brought by third parties"); *Rand-Whitney Containerboard L.P. v.*

*Town of Montville*, 290 Fed.Appx. 430, 433 (2nd Cir. 2008) (*citing Amoco*); *Atlantic Richfield*

*Co. v. Interstate Oil Transport Co.*, 784 F.2d 106, 115 (2nd Cir. 1986) ("indemnity agreements

are generally designed only to protect against liability for damage to third parties") (*citing*

6

*Schiavone Const. Co., Inc. v. County of Nassau*, 717 F.2d 747, 751 (2nd Cir. 1983)); *Kellogg Brown & Root Int'l v. Altannia Commercial Marketing Co.*, 2008 WL 5114962, *19-20 (S.D. Tex. 2008) (although an indemnity agreement might be written so as to require parties to indemnify each other against claims they later assert against each other, indemnity provisions "generally [do] not apply to claims between the parties to the agreement but obligate[] the indemnitor to protect the indemnitee against claims brought by third parties") (*citing MG Building Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 63-64 (Tex.App. San Antonio 2005)).

In this case, Ocean Bank is trying to manufacture contractual indemnity claims where none exist.  This is not a situation in which the bank is faced with a claim from a third party touching on its relationship with Patco, in response to which it now is turning to Patco for indemnification; rather, the bank is attempting to turn *Patco's own legal action* into an indemnifiable event.  Through its careful parsing of language the bank tries to forge a causative chain, culminating in its allegations that the claims it faces are the proximate result of actions taken by Patco.  Counterclaims ¶¶ 59, 60, 76, 77.  The problem for the bank is that even if this strained proposition were true, the claims it contends give rise to the indemnification obligation are *being brought by Patco itself*.  An indemnity claim simply is not viable under such circumstances.  *Cf. Amoco*, 810 A.2d at 264-65; *Atlantic Richfield*, 784 F.2d at 115.

II.   **The Indemnity Provisions Should Not Be Interpreted Broadly to Permit Ocean Bank to Recover Its Attorney's Fees Arising Out of Litigation with Patco**

Even if Ocean Bank could attempt to pursue contractual indemnification from Patco arising out of this first-party litigation, the language on which it relies applies to third-party claims and should not be transformed into a fee-shifting provision in this litigation between the parties.  It is fundamental that "[a]n indemnification claim based on contract must rest on a clear,

7

express, specific, and explicit contractual provision, under which the party against which a claim is to be asserted has agreed to assume the duty to indemnify. . . . A party cannot be subject to a contractual indemnification obligation that it has not unambiguously assumed." *Devine v. Roche Biomedical Laboratories, Inc.*, 637 A.2d 441, 446 (Me. 1994). *See also Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491-92, 548 N.E.2d 903, 905, 549 N.Y.S.2d 365, 367 (1989) (a promise to indemnify "should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances") (citations omitted)).  Nothing in the indemnification language in either the Modified eBanking Agreement or ACH Agreement demonstrates a clear, express and unambiguous intention to obligate Patco to pay the attorney's fees of Ocean Bank if the parties engage in litigation with each other.  Indeed, the language, read in its proper context, indicates that it was drafted with an eye toward possible third-party claims against the bank.

Both the Modified eBanking Agreement and ACH Agreement obligate the indemnitor to "*defend*" Ocean Bank, as well as indemnify it and hold it harmless, against possible claims arising from the fault of the indemnitor.  Modified eBanking Agreement § IV(A); ACH Agreement § 12(a).  The use of the word "defend" leaves little room for doubt that the indemnification obligation was designed to provide protection to the bank against third-party claims.  If the indemnity obligation applied to litigation between the customer and the bank, the obligation to "defend" would mean that the customer would have a duty to provide a defense to the bank against its own first-party action.  By this reasoning, Patco would be obligated to provide a defense to Ocean Bank against Patco's action in this case.  Such a result obviously makes little sense and militates strongly against an interpretation of the indemnification language as applying to first-party claims.  What the language clearly contemplates are actions brought by

third parties against the bank, in which case the bank might look to the customer to provide a defense.

For example, the ACH Agreement provides that the customer may initiate entries, with respect to which the customer represents and agrees that (1) "each person shown as the Receiver of an Entry received by Bank from Customer has authorized the initiation of such Entry and the crediting or debiting of its account in the amount and on the Effective Date shown on such Entry," (2) "such authorization is operative at the time of transmittal or crediting or debiting by Bank . . . ," and (3) "Customer shall provide copies of any and all such authorizations immediately upon request by Bank." ACH Agreement § 11.  The agreement then goes on to say that the "Bank shall not be responsible for Customer's acts or omissions (including without limitation the amount, accuracy, timeliness of transmittal or due authorization of any Entry received from Customer) . . . ."  ACH Agreement § 12.  This language encompasses potential claims that might arise against the bank from the receiver of an entry who contends, for example, that the entry was not properly authorized, was untimely or was inaccurate.  The receiver of an entry might seek to hold the bank responsible because it received the wrong amount of funds – or no funds – due to an error or omission on the part of the customer, in which case the bank might turn to the customer for defense and indemnity of such a claim.  Ocean Bank might also use the indemnity protections against third-party claims that it aided in a wrongful or fraudulent transfer of funds.[1]

There is nothing about the indemnification provisions at issue in this case that makes them different from any run-of-the-mill indemnification provisions designed to provide protection against third-party claims.   There is no "clear, express, specific, and explicit"

---

[1] For example, the Modified eBanking Agreement prohibits the use of eBanking "in furtherance or commission of any crime or other unlawful or improper purpose."  Modified eBanking Agreement § IV(A)(3).

language in the provisions, *see Devine*, 637 A.2d at 446, that would take them outside the normal rule and impose on the indemnitor the unusual obligation of paying the bank's attorney's fees arising out of litigation between the parties.  If the bank had intended to include such a provision in the agreements, it surely could have done so in a clear fashion, but it did not.  Nor did it include fee-shifting provisions in the agreements, which it also could have done explicitly.  The bank should not be allowed now to try to get such provisions in the "back door" by reinventing the agreements.

Ocean Bank should not be permitted to maintain its claims for attorney's fees in this case given its choice of language in the indemnification provisions and the purposes underlying those provisions.  This result is consistent with the operation of the American Rule, whereby litigants generally pay their own attorney's fees, regardless of the outcome of the case.  *Foremost Ins. Co. v. Levesque*, 2007 ME 96, ¶ 6, 926 A.2d 1185, 1187.[2]  As the New York Court of Appeals noted in *Hooper Associates*:

> Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise . . . .

*Hooper Associates*, 74 N.Y.2d at 492, 548 N.E.2d at 905, 549 N.Y.S.2d at 367 (citations omitted).  Similarly, in this case, because the indemnification provisions relied on by Ocean Bank fail to demonstrate a "clear, express, specific, and explicit" intention, *see Devine*, 637 A.2d at 446, by the parties to impose on Patco the bank's attorney's fees arising out of this litigation, the American Rule should operate as it normally would, and the bank's claims should be dismissed.

---

[2] The American Rule also is recognized under Connecticut law, which Ocean Bank previously has argued applies to this case.  *See Marsh, Day & Calhoun v. Solomon*, 529 A.2d 702, 709 (Conn. 1987).

Although Ocean Bank may attempt to counter Patco's position by citing to *Caldwell Tanks, Inc. v. Haley & Ward, Inc.*, 471 F.3d 210 (1st Cir. 2006), that decision is distinguishable in a number of important respects.   In *Caldwell*, the Court of Appeals held that under Massachusetts law an indemnitee could assert a claim for first-party defense costs based a broad indemnification provision that obligated the indemnitor to "indemnify and hold harmless" the indemnitee.  *Caldwell Tanks*, 471 F.3d at 213, 216-17.  The court's opinion was confined to its interpretation of Massachusetts law,[3] which is not applicable to the present case.  Central to the court's holding was its observation that Massachusetts law did not require indemnity contracts to be scrutinized to any higher degree than other contracts.  *Caldwell Tanks*, 471 F.3d at 215 (*citing Shea v. Bay State Gas Co.*, 418 N.E.2d 597, 600 (Mass. 1981)).  In contrast, Maine law requires that "[a]n indemnification claim based on contract must rest on a clear, express, specific, and explicit contractual provision," and a party "cannot be subject to a contractual indemnification obligation that it has not unambiguously assumed."  *Devine*, 637 A.2d at 446.  Finally, the indemnification language at issue in *Caldwell*, unlike the provisions at issue in this case, did not obligate the indemnitor to *defend*, as well as indemnify and hold harmless, the indemnitee.  *Caldwell Tanks*, 471 F.3d at 213.  Thus, the indemnification language in *Caldwell Tanks* was susceptible to the broader interpretation that it applied to first-party claims, unlike the provisions at issue in this case.  *See* discussion *supra*.

## CONCLUSION

For all the aforementioned reasons, Patco respectfully requests that the Court dismiss Ocean Bank's counterclaims in their entirety.

---

[3] The court noted that it could find "no Massachusetts appellate court decisions precisely on point" with the issues before it in the case.  *Caldwell Tanks*, 471 F.3d at 212.

Dated:  February 22, 2010

/s/ Daniel J. Mitchell
Daniel J. Mitchell
Eben M. Albert-Knopp
BERNSTEIN SHUR
100 Middle Street
P.O. Box 9729
Portland, Maine 04104-5029
(207) 774-1200

Attorneys for Plaintiff Patco Construction Company, Inc.

12

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record in the above-captioned matter.

Dated:  February 22, 2010                            /s/ Daniel J. Mitchell
                                                     Daniel J. Mitchell