IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| PATCO CONSTRUCTION COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> PEOPLE'S UNITED BANK d/b/a OCEAN BANK, <br><br> Defendant. | Civil Action No. 2:09-CV-00503-DBH |

**DEFENDANT PEOPLE'S UNITED BANK'S *DAUBERT/KUMHO* MOTION TO EXCLUDE EXPERT TESTIMONY OF GEORGE F. THOMAS AND INCORPORATED <u>MEMORANDUM IN SUPPORT THEREOF</u>**

Pursuant to Rule 702 of the Federal Rules of Evidence and the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591-97 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999), Defendant People's United Bank d/b/a Ocean Bank ("Ocean Bank") submits this memorandum in support of its Motion to Exclude Expert Testimony of Plaintiff Patco Construction Company Inc.'s ("Patco") purported expert, George F. Thomas.

## INTRODUCTION AND BACKGROUND

Patco hopes to undermine the plain meaning of the Agreements between the parties and instead relies upon the inadmissible legal "opinions" and mere *ipse dixit* of its purported expert George Thomas. Patco identified Thomas, who holds himself out as an "ACH professional," to provide his "opinion" regarding the meaning, purpose, and significance of certain provisions found in the clear and unambiguous agreements between the parties. Thomas purports to interpret legal contracts, a role that is the sole province of the Court and for which he is not qualified, and offers a second opinion completely irrelevant to the facts at issue. Because neither of his opinions satisfy either Rule 702 or *Daubert*, his testimony should be precluded in its entirety.

Specifically, Thomas purports to give his "interpretation" regarding the meaning of certain provisions found in the Ocean Bank eBanking and Bill Payment Agreement (the "Modified eBanking Agreement") and the Ocean National Bank Automated Clearing House Agreement (the "ACH Agreement") (together, the "Agreements"). Section XIII.B of the Modified eBanking Agreement provides: "If you choose to receive ACH debit transactions on your commercial accounts, **you assume all liability and responsibility to monitor your accounts on a daily basis**." Modified eBanking Agreement (App. 1B) (emphasis added).[1] Despite this clear language, which

---

[1] "App." refers to the Defendant's Master Appendix.

plainly imposed an obligation on Patco to monitor its accounts on a daily basis, Thomas proffers the indefensible opinion that the provision is inapplicable in this case because the alleged unauthorized transactions were ACH credits rather than ACH debits.  Thomas proffers this opinion despite his admission at his deposition that this very contractual language "literally" required Patco to monitor its accounts daily.[2]

Not only do his assertions directly contradict the plain and unambiguous contract language, such "expert opinion" regarding legal conclusions is plainly improper and will not assist this Court in understanding the evidence or determining a fact in issue.  It is axiomatic that judges do not require "enlightenment" on the law: "experts may not invade the court's province by testifying on issues of law."  *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 114 (1st Cir. 2003).  Further, Thomas's testimony is not based on any reliable methodology as he fails to provide *any* analysis or explanation to support his interpretation of the Agreements.  Finally, as he lacks any legal training, Thomas is not qualified to provide legal opinions.

Thomas proffers a second, completely meritless "opinion" that the $750,000 "ACH limit" on Patco's account (the "Account")—which represents the maximum dollar amount that may be transferred from Patco's Account via ACH—was "imprudently high" for Patco's needs.  This opinion is completely irrelevant because, as Patco concedes, **none** of the allegedly fraudulent withdrawals was for an amount over $115,620.  Moreover, it was Patco, not Ocean Bank, that requested multiple increases of its ACH limit to $750,000.  Thomas's irrelevant opinion on this point should be excluded as well.

---

[2]     Patco's other expert, Sari Greene, also agreed that this provision required Patco to monitor its accounts on a daily basis.  *See* Greene Ex. 5 (App. 18) (quoting from an e-mail from Ms. Greene to Patco: "More important is a clause in the online banking agreement [quoting XIII.B set forth below].  They can prove that PATCO did not do this and my guess is that this will allow them to limit their losses to just transactions that occurred on the day they were reported.").

**ARGUMENT**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony, and provides in pertinent part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702.

The trial court must act as a gatekeeper to ensure the reliability and relevancy of expert testimony: for an expert's testimony to be admitted, the proffered expert must be qualified to render a reliable opinion based on sufficient facts or data and the application of accepted methodologies. *Kumho Tire Co., Ltd.*, 526 U.S. at 152; *Daubert*, 509 U.S. at 592-93. To be admissible, the specialized knowledge to which an expert testifies must "assist" the trier of fact "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. When the fact or facts at issue do not require such "enlightenment," expert testimony will ordinarily be excluded. *See id*; *see also Cosenza v. Marshall*, 568 F. Supp. 2d 78, 83 (D. Mass. 2007).

**I.   THOMAS SHOULD BE PRECLUDED FROM OFFERING TESTIMONY REGARDING THE INTERPRETATION OF THE AGREEMENTS.**

    **A.   Thomas's Unsupported and Generalized Legal Conclusions Invade the Province of the Court and Will Not "Assist" the Court in Understanding the Evidence or Determining a Fact in Issue as Required by Rule 702.**

Paragraph XIII.B of the Modified eBanking Agreement provides that Patco assumed all liability and responsibility to monitor its accounts on a daily basis:

> "If you choose to receive ACH debit transactions on your commercial accounts, **you assume all liability and responsibility to monitor your accounts on a daily basis**."

Modified eBanking Agreement § XIII.B (App. 1B) (emphasis added).

Under this plain language, the duty to assume liability and responsibility to monitor the

3

accounts on a daily basis is triggered if the customer *generally* "choose[s] to receive ACH debit transactions on [its] commercial accounts," which, it is undisputed, Patco did. Implausibly, Thomas claims that this provision does not apply to this matter because the alleged fraudulent withdrawals were not ACH debit transactions but rather ACH credit transactions. Thomas Report ("Th. Rpt.") at 6 (App. 20); Thomas Dep. Tr. ("Th. Dep.") at 166:1-24; 167:1-6; 170:11-171:6 (App. 9). Plainly however, whether the particular fraudulent transactions in this case were credit or debit transactions is irrelevant to whether, by opting to receive ACH debits, Patco undertook the duty to assume liability and responsibility to monitor its accounts daily. Patco had a duty to monitor its accounts on a daily basis *for any and all activity, and thus be in a position to report any malfeasance on the account immediately*.[3] Notably, when pressed, Thomas admitted, in direct contradiction to the opinion in his report, that this provision literally imposes an obligation on Patco to monitor its account on a daily basis because it received ACH debits.[4] Th. Dep. at 175:13-176:16 (App. 9).

Thomas's proposed testimony is calculated to construe, explain, and interpret contractual provisions (despite an absence of legal training), and then offer opinion as to the application of those provisions to this case—a task indisputably reserved for this Court. By casting his legal advocacy as "expert" testimony, Thomas commandeers the function of this Court to determine and apply the law.

As every circuit has explicitly and routinely held, judges do not require "enlightenment" on the law: "experts may not invade the court's province by testifying on issues of law." *In re*

---

[3] The Modified eBanking Agreement provides no less than three times that the customer has the duty to report any unauthorized activity in the account *immediately*. Modified eBanking Agreement §§ X, XI, XIII.A (App. 1B).

[4] Thomas went on to say that his "interpretation" was different. Nothing could be more the province of the Court than contract "interpretation." Th. Dep at 171:20-180:8 (App. 9).

*Initial Pub. Offering Sec. Lit.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (citing cases from each circuit); *see also Gomez*, 344 F.3d at 114; *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1066 (9th Cir. 2002) ("an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law"). Myriad federal courts have excluded purported expert testimony on precisely these grounds.[5]

As contract interpretation is an issue of law reserved exclusively for the Court, expert testimony to interpret contractual terms or obligations is inadmissible. *See Gomez*, 344 F.3d at 114. In *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir. 1977), *cert. denied*, 434 U.S. 861 (1977), for example, the Second Circuit held that it was error for the trial court to allow a lawyer to render his opinions on the legal obligations arising from a contract and on the legal significance of various facts in evidence. "[L]egal opinions as to the meaning of the contract terms at issue . . . was testimony concerning matters outside [the witness's] area of expertise . . . . It is not for witnesses to instruct the jury as to the applicable principles of law, but for the judge."

---

[5] *See, e.g., Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (upholding district court's exclusion of testimony of law professor, where "proffered testimony was largely on purely legal matters and made up solely of legal conclusions"); *United States v. Klaphake*, 64 F.3d 435, 438 (8th Cir. 1995) ("As a general rule, questions of law are the subject of the court's instructions and not the subject of expert testimony.") (quoting *United States v. Vreeken,* 803 F.2d 1085, 1091 (10th Cir.1986)); *Specht v. Jensen*, 853 F.2d 805, 809, 810 (10th Cir. 1988) ("[O]ur system reserves to the trial judge the role of adjudicating the law for the benefit of the jury . . . . In no instance can a witness be permitted to define the law of the case."); *Casper v. SMG*, 389 F. Supp. 2d 618, 622 (D.N.J. 2005) (striking a law professor expert's legal opinions and noting that "[w]hile Plaintiff is free when the time comes to make such arguments and offer such conclusions in legal memoranda, [Plaintiff] may not do so through the expert testimony of a law professor"); *Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1043 (D. Ariz. 2005) ("Courts have held that expert testimony by lawyers, law professors, and others concerning legal issues is improper."); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1247 & n.7 (N.D. Cal. 2000) (excluding law professors' improper affidavits on questions of law, and observing that the law professor experts might have properly participated as *amici curiae* or advocates); *see also* 4-702 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.03[3] (2d ed. 1997) ("Expert testimony is not admissible to inform the finder of fact as to the law that will be [applied] to the facts in deciding the case . . . . Expert witnesses are also prohibited from drawing legal conclusions . . . . This proscription precludes an expert from testifying on the language of statutes, regulations or other legal standards that are at the heart of the case."). Indeed, "[t]he rule prohibiting experts from providing their legal opinions or conclusions is 'so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.'" *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 64-65 (quoting Thomas E. Baker, *The Impropriety of Expert Witness Testimony on the Law*, 40 U. Kan. L. Rev. 325, 352 (1992) (citing cases)).

5

*Id.* at 509-10; *see also Austin Fireworks, Inc. v. T.H.E. Ins. Co.*, No. 90-1341-FGT, 1993 WL 484214, at *1 (D. Kan. Aug. 2, 1993) (concluding that the construction of a written insurance contract is a matter of law and, accordingly, that expert testimony was inadmissible to decide the meaning and application of insurance policy); *CMI-Trading v. Quantum Air*, 98 F.3d 887, 890 (6th Cir. 1996) ("'experts' may not testify as to the legal effect of a contract"); *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969) (finding no error in trial court's exclusion of expert testimony on legal significance of documents, a matter of contract interpretation).

    **B.**  **Thomas's "Methodology" Is Unreliable Under *Daubert*.**

  Not only do Thomas's opinions invade the province of the Court, they lack any basis or reason in support thereof. Again, *Daubert* requires, "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592-93. Thomas completely failed to articulate ***any*** reasoning or methodology behind his interpretation of the Agreements. Therefore, his testimony must be excluded.

  According to his expert report, Thomas's sole "methodology" was to "review[] the document produced by Ocean Bank entitled 'Ocean Bank eBanking and Bill Payment Agreement.'" Th. Rpt. at 6 (App. 20). Noticeably absent from this "methodology" is any detailed explanation as to how exactly Thomas evaluated the Agreements and drew his conclusions regarding their interpretation and application. As explained in *Valencia v. United States*, "[e]xpert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions . . . [because] an expert who supplies only an ultimate conclusion with no analysis supplies nothing of value to the judicial process." CV F 05-0472 AWI GSA, 2008 U.S. Dist. LEXIS 17797, at *21 (E.D. Cal. Mar. 7, 2008) (citing *Finwall v. City*

6

*of Chi.*, 239 F.R.D. 494, 501 (N.D. Ill. 2006)); *see also Reed v. Binder*, 165 F.R.D. 424, 428 nn. 5-6 (D.N.J. 1996). Thomas's unsupported and generalized statements regarding the meaning of the Agreements between the parties are a classic example of the type of conclusory opinions that have been rejected by courts. For example, in *Smith v. Union Pacific Railroad Co.*, 168 F.R.D. 626 (N.D. Ill. 1996), the expert's opinion and the "basis and reasons" for it were as follows:

> Dr. Grear is of the opinion that the plaintiff's right knee joint replacement arthroplasty was the result of pre-existing degenerative arthritic conditions and not casually [sic] related to the incident of February 2, 1994. Dr. Grear bases his opinions upon *his background, experience and training as an orthopedic surgeon and upon a review of the complete medical records of the plaintiff and the plaintiff's deposition testimony*.

*Id*. at 629 (emphasis added). The *Smith* court concluded that this disclosure was patently deficient—in fact, could "almost be viewed as a bad joke." *Id*. at 628-29. Given the similarity between the disclosure in *Smith* and the disclosure in the instant case, Thomas's testimony should be excluded.

Thomas fared no better at his deposition. He failed to provide any further specifics about how he arrived at his opinions other than to state that he "looked at" the ACH and eBanking Agreements and e-mails related to the $750,000 ACH limit. Th Dep. at 149:1-150:22 (App. 9). This is patently deficient. *See Smith*, 168 F.R.D. at 628-29. When asked for the basis for his interpretation of the Agreements, Thomas vaguely cited his "experience":



A report that merely contains an expert's subjective, personal views must be excluded.

7

*See Dora Homes, Inc. v. Epperson*, 344 F. Supp. 2d 875, 889 (E.D.N.Y. 2004) (rejecting expert's "subjective" and speculative opinion as "patently devoid of reliability"). Thus, "an expert who is relying solely . . . on experience . . . must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 473 n.2 (S.D.N.Y. 2005) (internal quotation marks and citations omitted). Thomas's testimony is no more than an unfounded conclusory statement of Patco's position and should be excluded.

    **C.    Thomas Is Not Qualified to Render "Expert" Opinions Regarding the Interpretation of the Agreements.**

Thomas's testimony should be excluded for the additional reason that he is not qualified to render "expert" opinions interpreting the Agreements. As explained above, contract interpretation is an issue of law. At his deposition, Thomas conceded multiple times that he is not a lawyer and has "no specialized training" to read legal agreements. *See* Th. Dep. at 167:16-18; 168:9-19; 169:1-4 (App. 9). In fact, Thomas is not even a college graduate and has never before served as an expert witness. *Id.* at 30:16-24.

Moreover, Thomas did not thoroughly review the Agreements he purports to interpret. During his deposition, Thomas testified repeatedly that he had only one of the two electronic banking agreements between the parties in mind when he prepared his expert report. *See id.* at 188:12-15 (Q: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ 191:5-8; 196:15-197:4. In fact, he testified that he never even noticed that "his" report, which was in fact prepared by Patco counsel, referenced two different electronic banking agreements.



8

█████████████████

At bottom, Thomas has no specialized training or knowledge relating to the interpretation or application of the Agreements, and he spent so little time reviewing the actual Agreements that he failed to realize that his report was referencing two different Agreements. He is not qualified to offer opinions on the interpretation of clear and unambiguous contract provisions and his experience as an "ACH professional" is not enough. Th. Rpt. at 7 (App. 20); *see Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 530 (S.D.N.Y. 2001) ("While it is permissible for [an expert] to base his opinion on his own experience, he must do more than aver conclusorily that his experience led to his opinion.").

## II. THOMAS SHOULD BE PRECLUDED FROM OFFERING TESTIMONY REGARDING THE $750,000 ACH LIMIT.

Thomas's opinion that the $750,000 daily "ACH limit" on Patco's account was "imprudently high" for Patco's needs should be excluded because it is a red herring completely irrelevant to the dispute in this case. As Patco and Thomas concede, **none** of the alleged fraudulent withdrawals was for an amount over $115,620. 2d Am. Compl. ¶¶ 25, 31, 35, 42; Th. Dep. at 220:13-14 (App. 9). In fact, half of the allegedly fraudulent withdrawals were under $100,000. Because it is undisputed that none of the alleged fraudulent withdrawals came anywhere near the $750,000 ACH limit, this limit is irrelevant. Th. Rpt. at 7 (App. 20); Th. Dep. at 149:23-154:1 (App. 9).

Thomas's opinion regarding the ACH limit should therefore be excluded. *Muskat v. United States*, 554 F.3d 183, 194 (1st Cir. 2009) (affirming exclusion of expert testimony that would "shed no light on the meaning of the noncompetition agreement" at issue because such testimony would be "a significant distraction"); *see also Reali v. Mazda Motor of Am., Inc.*, 106 F. Supp. 2d 75, 78 (D. Me. 2000) (finding that "trial judge may **exclude** expert testimony that is

9

**irrelevant**—[i.e.,] testimony that does not fit with the facts of the case") (emphasis in original); *Osborne v. Robinette*, No. No. 1:05-0106, 2006 WL 5309949, at *4 (Oct. 4, 2006).[6]

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter an order precluding Thomas from providing expert testimony.

          Respectfully submitted,

          PEOPLE'S UNITED BANK

          By its attorneys,

          /s/    John F. Lambert, Jr.
          John F. Lambert, Jr.
          Lambert Coffin Haenn
          P.O. Box 15215
          477 Congress Street
          Portland, ME  04112
          (207) 874-4000
          jlambert@lambertcoffin.com

          *and*

          /s/    Brenda R. Sharton
          Brenda R. Sharton (*pro hac vice*)
          Michelle Gonnam McNamara (*pro hac vice*)
          GOODWIN PROCTER LLP
          Exchange Place
          Boston, MA  02109-2881
          (617) 570-1000
          bsharton@goodwinprocter.com
          mgonnam@goodwinprocter.com

Dated:  August 27, 2010

---

[6] Thomas also purports to opine that no part of the ACH Agreement contained security procedures that would have applied to eBanking other than user ID and passwords.  Thomas purported to render this "opinion" even though he admitted repeatedly during his deposition that he was not a bank security expert.  Given his lack of expertise and qualifications in this area, and his lack of scientific methodology upon which to base this opinion, Thomas should also be precluded from offering this opinion.  *See, e.g.*, Th. Dep.  at 37:23-38:1; 111:19-112:23; 119:14-16; 213:5-21 (App. 9).

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 27, 2010.

      /s/    Brenda R. Sharton